# United States Court of Appeals for the Federal Circuit

---

**RAYMOND E. STAUFFER,**
*Plaintiff-Appellant,*

v.

**BROOKS BROTHERS GROUP, INC.,**
**formerly known as Retail Brand Alliance, Inc.,**
**formerly known as Brooks Brothers, Inc.,**
*Defendant-Appellee,*

AND

**UNITED STATES,**
*Intervenor-Appellee.*

---

2013-1180

---

Appeal from the United States District Court for the Southern District of New York in No. 08-CV-10369, Judge Sidney H. Stein.

---

Decided: July 10, 2014

---

RAYMOND E. STAUFFER, of Chatham, New Jersey, argued pro se.

STEPHEN L. BAKER, Baker & Rannells, PA, of Raritan, New Jersey, argued for defendant-appellee. With him on

the brief were NEIL B. FRIEDMAN and RYAN A. MCGONIGLE.

ADAM C. JED, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for intervenor-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, PREET BHARARA, United States Attorney, and SCOTT R. MCINTOSH, Attorney.

―――――――――

Before LOURIE, SCHALL, and MOORE, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Pro se plaintiff-appellant Raymond E. Stauffer brought this *qui tam* action in the United States District Court for the Southern District of New York in 2008.[1] In his suit, Mr. Stauffer sued defendant-appellee Brooks Brothers, Inc. ("Brooks Brothers") under the then-extant version of the false-marking statute, 35 U.S.C. § 292 (2006).[2] Mr. Stauffer alleged that Brooks Brothers violated the statute by marking its bow ties with expired patent numbers.

In 2011, while Mr. Stauffer's action was pending, the President signed into law the America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (the "AIA"). The AIA

―――――――――

[1] A *qui tam* action is one brought under a statute that allows a private person to sue for a penalty on behalf of the government or a public institution. In return, the government or public institution shares a portion of the penalty. Black's Law Dictionary 1368 (9th ed. 2009).

[2] Brooks Brothers, Inc. was merged into defendant-appellee Retail Brand Alliance, Inc. and no longer exists. On August 8, 2011, Retail Brand Alliance, Inc. changed its name to Brooks Brothers Group, Inc.

made three significant changes to the false-marking statute that affected Mr. Stauffer's claim: (1) it eliminated the statute's *qui tam* provision, changing the law so that only a "person who has suffered a competitive injury" may bring a claim, AIA § 16(b)(2); (2) it expressly stated that marking a product with an expired patent is not a false-marking violation, *id.* § 16(b)(3); and (3) it expressly stated that these amendments apply to all pending cases, *id.* § 16(b)(4).

After the AIA became law and eliminated the *qui tam* provision of the false-marking statute, Mr. Stauffer acknowledged that he no longer had standing to pursue his lawsuit. The district court subsequently issued an order directing him to show cause why, in light of the AIA, his suit should not be dismissed for lack of standing. Mr. Stauffer responded by arguing that the AIA amendments were unconstitutional because they amounted to a pardon by Congress, thus violating the doctrine of separation of powers. He also argued that, by making the elimination of the *qui tam* provision applicable to pending suits, the statute violated the common-law principle that prohibits use of a pardon to vitiate a *qui tam* action once the action has commenced. The government, as an intervenor, defended the constitutionality of the AIA.

On December 19, 2012, the district court dismissed Mr. Stauffer's suit for lack of standing due to the AIA's elimination of the false-marking statute's *qui tam* provision, *Stauffer v. Brooks Bros., Inc.*, No. 08-Civ-10369, 2012 WL 6621374 (S.D.N.Y. Dec. 19, 2012) ("*Final Decision*"), and on January 16, 2013, the court denied reconsideration, *Stauffer v. Brooks Bros., Inc.*, No. 08-Civ-10369 (S.D.N.Y. Jan. 16, 2013). Mr. Stauffer now appeals the dismissal of his suit. For the reasons set forth below, we affirm.

BACKGROUND

I.

The false-marking statute, 35 U.S.C. § 292, makes unlawful various acts of falsely marking products with patent numbers. Under § 292(a), a person who violates the statute "[s]hall be fined not more than $500 for every such offense." At the time Mr. Stauffer filed his suit, § 292(b) allowed any person to sue for the penalty. If the suit was successful, one half of the penalty paid would go to the United States.

The basis of Mr. Stauffer's allegation was that Brooks Brothers had violated the false-marking statute by marking its bow ties with patent numbers that had expired more than a half century ago. However, before reaching the merits of the suit and before enactment of the AIA, the district court dismissed it for lack of standing, finding that Mr. Stauffer failed to satisfy the constitutional requirement of an "injury in fact." *Stauffer v. Brooks Bros., Inc.*, 615 F. Supp. 2d 248 (S.D.N.Y. 2009). Subsequently, the government sought to intervene, contending that the court's dismissal drew into question the constitutionality of the statute. *Stauffer v. Brooks Bros., Inc.*, No. 08-Civ-10369, 2009 WL 1675397, at *1 (S.D.N.Y. June 15, 2009). The district court denied the government's request. *Id.* at *4.

On appeal, we reversed both decisions of the district court. *Stauffer v. Brooks Bros., Inc.*, 619 F.3d 1321, 1322 (Fed. Cir. 2010). First, we held that, if Mr. Stauffer's allegations were correct, the United States had suffered an "injury in fact" and that therefore Mr. Stauffer, as an assignee of the government's damages claim, satisfied the requirement of showing standing. *Id.* at 1328. Second, we held that the government had the right to intervene to protect its interest. *Id.* at 1329. Accordingly, we remanded for further proceedings.

## II.

While the case was pending, the President signed into law the AIA. As noted above, the AIA made three significant changes to the false-marking statute: it eliminated the statute's *qui tam* provision; it expressly stated that marking a product with an expired patent is not a violation of the statute; and it provided that the amendments apply to all pending cases. AIA § 16(b).

After enactment of the AIA, Mr. Stauffer conceded that the amendments eliminated his standing and left him with no claim for relief on the merits. *Final Decision* at *1. He contended, however, that applying the amendments retroactively violated the Constitution's separation of powers. In response to the district court's order to show cause why his case should not be dismissed, Mr. Stauffer argued that the retroactive application of the amendments usurped the President's pardon power. According to Mr. Stauffer, Brooks Brothers committed a criminal act by falsely marking its bow ties with expired patent numbers. By eliminating Brooks Brothers' criminal liability, Mr. Stauffer claimed, Congress effectuated a pardon—a right exclusively granted to the President. Mr. Stauffer also argued that the amendments to the false-marking statute violated the common-law *qui tam* principle that prohibits use of a pardon to vitiate a *qui tam* action once it has commenced. In a subsequent reply brief, Mr. Stauffer raised additional constitutional arguments. He also argued in his reply brief that, as an alternative basis for standing, he had suffered a "competitive injury," as that phrase is used in the AIA. According to Mr. Stauffer's argument, Brooks Brothers' false marking chilled competition and thus inflated the price he paid for his bow ties, thereby injuring him.

Regarding the pardon-power argument, the district court ruled that, assuming the false-marking statute amendments immunized certain law breakers, Congress's

action amounted to a general amnesty. *Final Decision* at *3. Relying on *Brown v. Walker*, 161 U.S. 591 (1896), the court held that Congress had the power to grant a general amnesty without encroaching on the President's power. Moreover, rather than usurp the President's power, the court found, the amendments instead placed the authority to seek the statutory penalty for false marking solely within the President's hands. *Final Decision* at *3.

Regarding Mr. Stauffer's additional arguments, the court held that Mr. Stauffer lacked standing to make them and that he had waived the arguments by failing to raise them in his opening response to the court's show-cause order. *Id.* at *4 n.3. The court, however, did address Mr. Stauffer's claim that he had standing because he had suffered a "competitive injury." Relying on our decision in *Brooks v. Dunlop Manufacturing, Inc.*, 702 F.3d 624 (Fed. Cir. 2012), the court found that Mr. Stauffer could not have suffered a "competitive injury" because he is a consumer of bow ties—not a competitor of Brooks Brothers. *Final Decision* at *4.

Mr. Stauffer timely appealed the dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.

"The question of standing to sue is a jurisdictional one . . . which we review *de novo*." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc) (citations omitted). "The constitutionality of an act of Congress is a question of law that is likewise reviewed *de novo*." *Brooks*, 702 F.3d at 628 (citing *Thomson Multimedia Inc. v. United States*, 340 F.3d 1355, 1359 (Fed. Cir. 2003)).

On appeal, Mr. Stauffer makes two main arguments, which we address in turn.

## II.

### A.

Mr. Stauffer first contends that the retroactive application of the AIA amendments amounts to a mass pardon of past acts of false marking. According to Mr. Stauffer, the false-marking statute is a criminal statute and, before enactment of the AIA, marking a product with an expired patent number was a criminal violation. After enactment of the AIA, however, such actions are no longer punishable. Mr. Stauffer therefore argues that the amendments are unconstitutional because they amount to a pardon that only the President—not Congress—can grant.

Second, Mr. Stauffer contends that the retroactive amendments which eliminate his standing, as a *qui tam* plaintiff, amount to an unconstitutional deprivation of his rights, by violating the common-law principle that prohibits use of a pardon to vitiate a *qui tam* action once it has commenced. According to Mr. Stauffer, pardons are limited to the same extent they originally were limited in England. As stated in Blackstone's Commentaries on the Laws of England, Mr. Stauffer argues, a pardon cannot be used to vitiate an informer's action after the action has been commenced because the informer has already acquired a private-property interest in his share of the penalty.

Brooks Brothers responds that the false-marking statute is not a criminal statute and that there thus was no criminal act to pardon. Rather, Brooks Brothers urges, the statute is penal in nature with a civil fine. Moreover, Brooks Brothers contends, the President signed the AIA into law himself, so the argument that Congress bypassed the President in granting a pardon is illogical on its face. Finally, Brooks Brothers argues, even if the false-marking statute was criminal in nature, Congress did not grant a pardon to anyone. Rather, it changed the law to redefine what constitutes false marking.

Regarding Mr. Stauffer's second argument, Brooks Brothers responds that the Supreme Court decided the issue over a hundred years ago in the case of *United States v. Connor*, 138 U.S. 61 (1891), when it held that Congress could constitutionally amend laws in a way that nullified a pending suit of a *qui tam* claimant. In any event, Brooks Brothers also responds that there was never a common-law right to a *qui tam* suit in England. Likewise, there was no common-law *qui tam* right when the United States was formed. Accordingly, Brooks Brothers urges, Mr. Stauffer's argument fails because there was no common-law right to *qui tam* standing for Congress to have vitiated in the AIA.

The government contends that Mr. Stauffer lacks standing to make his pardon-power argument because a favorable decision would not redress his injury. According to the government, if we strike down the AIA amendment that eliminated liability for marking products with expired patent numbers, Mr. Stauffer's lawsuit would still need to be dismissed because the *qui tam* provision upon which he originally brought suit no longer exists. Indeed, the government argues, it has long been held that the legislature could halt pending *qui tam* actions as it wished. A decision on Mr. Stauffer's pardon-power argument, therefore, the government contends, would be nothing more than an advisory opinion.

On the merits, the government contends that no one has a vested interest in a rule of law and that Congress is free to change the laws and eliminate statutorily created causes of action. The government further argues that a change in the substantive law is not a pardon. As the government sees it, by changing the definition of false marking, Congress did not exempt people from the punishment the law inflicts but instead changed the law itself. Finally, the government urges, false-marking actions are civil actions and there can be no pardon for a civil penalty.

Regarding his second argument, the government responds that Mr. Stauffer mistakenly relies on the observation that, at common law in England, the King's pardon power did not reach pending *qui tam* suits. Mr. Stauffer is mistaken, the government explains, because a change in the law to a pending lawsuit is not a pardon, and it was well established at common law that the parliament in England could release an informer's interest even after he commenced a suit.

In reply, regarding the government's contention that he has no standing to make his pardon-power argument on appeal, Mr. Stauffer argues that he has collectively challenged both the expired-patent provision as well as the retroactivity provision of the AIA amendments, and that striking down all of the false-marking amendments would redress his injury.

### B.

Before addressing the merits of an appeal, we must first resolve whether we have jurisdiction over the matter appealed. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Whether a plaintiff has standing is a jurisdictional question. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). Before turning to the merits of Mr. Stauffer's pardon-power argument, therefore, we address first the government's contention that Mr. Stauffer lacks standing to even make such an argument.

The Supreme Court has explained that, in order for there to be standing in a case, at a minimum, three requirements must be met:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct

> complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). If independent legal provisions bar a claim and only one provision is at issue, then a favorable decision might not redress a party's injury. *See Renne v. Geary*, 501 U.S. 312, 319 (1991) (questioning whether redressability existed when two separate legal provisions barred the conduct of the litigants, but the constitutionality of only one of the provisions was before the Court).

The government's contention goes to the third element of constitutional standing—redressability. According to the government, if we strike down as unconstitutional the AIA amendment that eliminated liability for marking products with expired patent numbers, Mr. Stauffer could not continue his suit because the AIA eliminated the false-marking statute's *qui tam* provision, so that now only a person who has suffered a competitive injury may bring a claim under the statute. Therefore, the government concludes, a favorable decision could not "redress" Mr. Stauffer's injury.

We conclude that Mr. Stauffer has the necessary standing on appeal to make his arguments. First, Mr. Stauffer seeks to establish that Congress carried out an unconstitutional pardon when it amended the false-marking statute to permit marking with expired patent numbers. Second, he seeks to show that Congress could not have constitutionally eliminated the ability of a *qui tam* plaintiff to enforce false-marking violations. Were he to win on both issues, it is likely rather than speculative

that a favorable decision would redress his alleged injury. We consider each issue in turn.

III.

A.

Striking down an Act of Congress as unconstitutional "is the gravest and most delicate duty" which a court may be called upon to perform. *Blodgett v. Holden*, 275 U.S. 142, 147–48 (1927) (opinion of Holmes, J.). We have previously addressed and rejected challenges to the constitutionality of the false-marking statute amendments on two different occasions. In *Brooks*, 702 F.3d at 632–33, we upheld the constitutionality of the retroactive elimination of the statute's *qui tam* provision, concluding that retroactive elimination did not violate the Due Process Clause or the Intellectual Property Clause of the Constitution. And, in *Rogers v. Tristar Products, Inc.*, Nos. 2011-1494, 2011-1495, 2012 WL 1660604, at *2–3 (Fed. Cir. May 2, 2012) (nonprecedential), we rejected the argument that *qui tam* plaintiffs have vested rights in pre-AIA lawsuits and concluded that making the amendments to the false-marking statute retroactive did not violate the Takings Clause or the Due Process Clause of the Constitution. We now conclude that the AIA amendment to the false-marking statute that eliminated liability for expired patents does not constitute an impermissible pardon.

The U.S. Constitution grants the President the "power to grant reprieves and pardons for offenses against the United States." U.S. Const. art. II, § 2. The grant of a pardon is an "executive action that mitigates or sets aside punishment for a crime." *Nixon v. United States*, 506 U.S. 224, 232 (1993) (quoting Black's Law Dictionary 1113 (6th ed. 1990)). Rather than granting a pardon, the amendments to the false-marking statute are better characterized as repealing a law, an action undoubtedly within Congress's power. Indeed, at common law, it has long

been held that Congress has the power to "repeal[] a penal provision (whether criminal or civil)" and that "such repeals [are] understood to preclude punishment for acts antedating the repeal." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270–71 (1994) (collecting cases); *see also United States v. Chambers*, 291 U.S. 217, 223 (1934) ("In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose.").[3]  Significantly, this is not a case where Congress attempted to set aside an already adjudicated punishment for a specific individual or a group of individuals; rather, Congress repealed the provisions of the false-marking statute that it did not wish to remain in force.  The amendments, therefore, do not constitute a pardon.

## B.

Further, we conclude that the AIA amendments do not violate the common-law principle on which Mr. Stauffer relies because (1) he has no vested rights in his lawsuit, and (2) the AIA amendments do not constitute a pardon.  First, a plaintiff has no vested rights in a lawsuit until final judgment has been entered.  *McCullough v. Virginia*, 172 U.S. 102, 123–24 (1898).  Because Mr. Stauffer's case is still pending and has not reached final judgment, he has no vested rights in it.  Further, we have already considered and rejected the argument that a litigant like Mr. Stauffer enters into a contract with the government upon filing a *qui tam* false-marking claim.

---

[3]   The federal saving statute, 1 U.S.C. § 109, overrides the common law rule and keeps repealed statutes alive for pending prosecutions except where the repealing act expressly provides otherwise.  Here, the AIA amendments expressly provide that they apply to pending cases. AIA § 16(b)(4).

*Brooks*, 702 F.3d at 632.  Even if the law had not changed, Mr. Stauffer might still have lost his lawsuit against Brooks Brothers.  He, therefore, could not have acquired a private-property interest in his share of the statutory penalty simply by filing suit.  *See id.*  In addition, as noted above, the AIA amendments do not constitute a pardon. The common-law principle on which Mr. Stauffer relies, therefore, does not apply here and does not save his suit from dismissal.

## IV.

Finally, Mr. Stauffer makes a host of additional arguments on appeal that were not properly raised before the district court.  Regarding the constitutionality of the false-marking statute, he argues that the provision allowing anyone who suffered a "competitive injury" to sue violates the Ex Post Facto Clause because it creates additional liability for past acts by companies like Brooks Brothers.  He also argues that all of the amendments violate the Takings Clause of the Fifth Amendment because they result in him losing the filing fee he paid to the district court in order to bring his case.  In addition, he urges that the amendments violate the Seventh Amendment's right to a trial by jury because he no longer has the opportunity to argue the merits of his case at trial.

Additionally, Mr. Stauffer argues that he has suffered a "competitive injury" as that term is used in the amendments because the false marking by Brooks Brothers chilled competition and increased the price he paid for his bow ties.  He also argues that Brooks Brothers should be estopped from denying liability, and that the case should be reassigned to a different judge on remand.

Brooks Brothers and the government argue that Mr. Stauffer waived all of these arguments by not properly raising them before the district court.  We agree.

The record shows that Mr. Stauffer did not raise these arguments in his initial response to the district court's show-cause order, but instead waited until his reply brief before the district court to first raise them. *Compare* Joint Appendix 809, *with* 887. Issues not properly raised before the district court are waived on appeal. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295–96 (Fed. Cir. 2009) (finding arguments waived that were not properly raised before the district court); *see also DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 347 (S.D.N.Y. 2008) (noting that new arguments may not be raised for the first time in a reply brief).

CONCLUSION

For the foregoing reasons, we affirm the dismissal of Mr. Stauffer's suit for lack of standing due to the elimination of the *qui tam* provision in the false-marking statute.

**AFFIRMED**